*Exhibit A*

## **AFFIDAVIT**

Darwin Huggins, being duly sworn, states as follows:

1. I am an Assistant Special Agent in Charge ("ASAC") of the United States Fish and Wildlife Service ("USFWS"), and have been so employed for approximately 4 years. I have worked as a LE officer for the USFWS for approximately 25 years, with approximately 21 years as a Special Agent.

### A.   Introduction and Property to Be Forfeited

2. The information in this affidavit comes from my own investigation, training, and experience, as well as that of other USFWS personnel with firsthand knowledge of the facts contained herein. Because this affidavit is submitted for the limited purpose of supporting a Verified Complaint of Forfeiture, I have not included each and every fact known to me about the investigation described below.

3. This affidavit is submitted in support of the forfeiture of the following ("the defendant wildlife specimen"): **One (1) Elephant (*Elephantidae*) Ivory Crucifix**. This forfeiture is sought pursuant to 16 U.S.C. §1540(e), which provides for the forfeiture of all wildlife specimens possessed, traded or imported contrary to the Endangered Species Act. It has a declared value of $5,049.00.

### B.   Applicable Statutory and Regulatory Provisions

4. The Endangered Species Act ("ESA") provides for the conservation of threatened and endangered species of fish, wildlife, plants, and the ecosystems upon which the species depend; it further provides for achieving the purposes of various treaties and conventions entered into by the United States addressing species conservation, including, *inter alia*, the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087; TIAS

8249, Mar. 3, 1973 ("CITES"). 16 U.S.C. §1531. More specifically, the ESA and its implementing regulations prohibit unauthorized taking, possession, sale, and transport of endangered and threatened species and also authorize the assessment of civil and criminal penalties for violating the ESA or its implementing regulations. 16 U.S.C. §§1531-44. Among these prohibitions, the ESA makes it unlawful to engage in trade in any specimens contrary to CITES or to possess any specimens so traded. 16 U.S.C. §1538(c).

5. Title 16, United States Code, Chapter 35 (Endangered Species), Section 1538 lists the prohibited acts under the Chapter, to include: (1) subsection (c) "Violation of Convention," which makes it unlawful to engage in the trade or importation of any specimens contrary to the provisions of CITES or to possess any specimens contrary to the provisions of CITES or to possess any specimens traded contrary to the provisions of CITES; (2) subsection (e) "Reports," which makes it unlawful for any person importing wildlife to fail to file any declaration or report deemed necessary by the Secretary of the Interior to facilitate enforcement of Chapter 35 or to meet the obligations of CITES; and (3) subsection (g) "Violations," which makes it unlawful for any person to attempt to commit, solicit another to commit, or cause to be committed, any offense defined in Section 1538.

6. One of the means by which threatened and endangered species are conserved under the ESA and its implementing regulations is through the regulation of the import and export of wildlife. The volume and type of all wildlife imported or exported, whether protected as endangered or threatened, is required to be monitored through declarations and inspections to ensure international trade is legal and not detrimental to the survival of protected species and to intercept and interdict illegal importations and exportations of wildlife. 16 U.S.C. §1538(d)-(f); 50 C.F.R. Part 14. Other requirements are aimed at protecting species that have been given a

specific status or listing intended to protect the continued existence of that species, for example through required permits. 16 U.S.C. §1538(c); 50 C.F.R. Parts 13 and 23.

7. For purposes of enforcement of the ESA, import means "land on, bring into, or introduce into, or attempt to land on, bring into, or introduce into any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the tariff laws of the United States." 50 C.F.R. §§14.4, 23.5.

8. Under the ESA, it is unlawful to import or cause to be imported any wildlife without filing with the USFWS a completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) ("Wildlife Declaration") prior to the import of any wildlife unless certain limited exceptions apply. 16 U.S.C. §1538(e) and (g); 50 C.F.R. §14.63. All applicable information requested on the Wildlife Declaration must be furnished and the information provided must be certified as true and complete. Wildlife must be identified to the species level, and the quantity of wildlife for each species identified must be entered. Form 3-177 available at http://www.fws.gov/le/declaration-form-3-177.html.

9. Under the ESA, it is unlawful to import or cause to be imported any wildlife without obtaining clearance prior to import from the USFWS unless a Service officer expressly authorizes otherwise. 16 U.S.C. §1538(e) and (g); 50 C.F.R. §14.52(a). To obtain clearance, various required accompanying documents, including permits required by the United States and the country of export, as well as the wildlife must be made available. 50 C.F.R. §14.52(c). This allows, among other things, the United States to fulfill its CITES obligation to verify that valid CITES documents accompany shipments and take enforcement action when shipments do not comply with CITES. 50 C.F.R. §23.27.

10. CITES is an international treaty that establishes an international system of import/export regulations to protect listed species of plants and animals, including any recognizable part or derivative thereof, from over-exploitation through international trade, whether commercial or noncommercial. Plant and animal species may be listed in Appendix I, Appendix II, or Appendix III, each of which provides a different level of protection and is subject to different requirements. Different levels of trade regulation are provided depending on the status of the listed species and the contribution trade makes to the decline of the species. The trade restrictions established by CITES are enforced through a system of permits and certificates. Currently there are 181 Parties to CITES, including the United States and Germany.

11. The Elephant (*Elephantidae*) has been listed in the Appendices to CITES, with some populations of some species listed on Appendix II and the remaining populations on Appendix I. Thus, all species of elephant are listed under at least the Appendix II level of protection. If the ivory in the defendant wildlife specimen is from African elephant (*Loxodonta africana*), then it is from a species all populations of which are listed in either Appendix I or Appendix II of CITES (within the meaning of 50 C.F.R. §§23.4 and 23.91) in addition to being listed under the ESA (in 50 C.F.R. §17.11) as threatened. If, instead, the defendant wildlife specimen contains ivory from Asian elephant (*Elephas maximus*), then it is from a species that is listed in Appendix I of CITES (within the meaning of 50 C.F.R. §§23.4 and 23.91) in addition to being listed under the ESA (in 50 C.F.R. §17.11) as endangered.

12. Appendix I includes species threatened with extinction that are or may be affected by trade. Trade in Appendix I specimens may take place only in exceptional circumstances. 50 C.F.R. §§23.4(a), 23.20. It is unlawful to import into the United States (absent limited, defined exceptions) any wildlife or wildlife products listed on Appendix I unless a United States import

permit and either a valid foreign export permit issued by the country of origin or a re-export certificate from the country of re-export are obtained prior to such importation. 50 C.F.R. §23.13. Those CITES documents must accompany the shipment and be presented on import to the inspecting officials in the country of import for validation or certification. 50 C.F.R. §§23.20, 23.26(b) and 23.27(c).

13. Appendix II includes species that may become threatened with extinction if trade, whether commercial or noncommercial, is not regulated. 50 C.F.R. §§23.4(b); 23.5 (definition of "trade"). It is unlawful to import into the United States (absent limited, defined exceptions) any wildlife or wildlife products listed on Appendix II unless a valid export permit from the country of origin or a re-export certificate from the country of re-export is obtained prior to such export. 50 C.F.R. §23.13. That CITES document must accompany the shipment and be presented on import to the inspecting officials in the country of import for validation or certification. 50 C.F.R. §§23.20, 23.26(b) and 23.27(c).

14. To be valid, a CITES document must either be original or a copy endorsed thereon by the CITES Management Authority for use in place of the original, CITES, Article VI (4), 50 C.F.R. §23.26(b). In addition, a CITES document must meet the requirements set out in 50 C.F.R. §§23.23-23.26 and the conditions in 50 C.F.R. §23.26(c). These requirements are intended to prevent the use of false or invalid permits for fraudulent purposes or to evade export controls.

15. Under the ESA, it is unlawful to import into the United States any wildlife without filing a declaration deemed necessary by the Secretary of the Interior. Title 50, Chapter One, Section 14.61 of the United States Code of Federal Regulations requires that a completed

5

Wildlife Declaration be filed with the USFWS prior to the import of any wildlife at the place where USFWS clearance is requested.

16.  Under the ESA, it is unlawful to import any wildlife without obtaining from the USFWS a clearance prior to import. To obtain clearance, the importer must make available necessary documents and permits as well as the wildlife being imported. Title 50, Chapter One, Section 14.52

17.  Title 16, United States Code, Section 1540(e) provides for the forfeiture of all wildlife taken, possessed, transported, delivered, received, carried, shipped, exported, or imported contrary to: the provisions of Title 16, United States Code, Chapter 35; any regulation made pursuant to Chapter 35; or any permit or certificate issued under Chapter 35.

### C.   Illegal Importation of the Defendant Property

18.  Claimant Murvyn Callo ("claimant") purchased the defendant wildlife specimen from Eppli Auktionen ("exporter"), an auction house in Stuttgart, Germany, on or about April 18, 2015. The exporter then shipped the defendant wildlife specimen from Germany to claimant at a San Diego, California address via Federal Express ("FedEx"). The air waybill ("AWB") accompanying the parcel, AWB number 7735 7772 3661, which identified claimant's address as 4226 Ingleside Avenue, San Diego, California, described the contents as "Outstanding large ivory Christ corpus, probably 19th century," and stated the carriage and customs value as $4,429.50 EUR.

19.  The parcel containing the defendant wildlife specimen arrived at the Federal Express International Cargo Facility in Memphis, Tennessee on or about May 13, 2015, and was presented to Wildlife Inspector ("WI") Morey Bell for routine physical inspection. Upon

6

inspection, WI Bell found that the parcel contained one crucifix without any supporting documentation.

15.     WI Bell determined, based upon a visual examination, accompanying documents and packaging and other circumstances as provided in 50 C.F.R. §§ 23.5 and 23.92(a), that the ivory crucifix – identified herein as the defendant wildlife specimen – contained the parts, products or derivatives of a specimen from African Elephant (*Loxodonta Africana*). The African elephant (*Loxodonta africana*) has been listed since 1976 on the Appendices to CITES, some populations of which are currently listed in either Appendix I or Appendix II of CITES within the meaning of 50 C.F.R. §§ 23.4 and 23.91. The Asian elephant (*Elephas maximus*) has been listed since 1975 on Appendix I of CITES (published through 50 C.F.R. §23.91). Both species were so listed at the time the defendant wildlife specimen was imported into the United States. If the defendant wildlife specimen is from a species or population of elephant listed in Appendix I of CITES, then a United States import permit and either an export permit or re-export permit from Germany was required for importation. If, on the other hand, the defendant wildlife specimen is from a species or population of elephant listed in Appendix II of CITES, then an export permit or re-export permit from Germany was required. However, no CITES permit authorizing the importation of the defendant wildlife specimen into the United States accompanied the defendant wildlife specimen or was otherwise presented to USFWS for it. Additionally, WI Bell confirmed that no Wildlife Declaration had been filed with the USFWS for the defendant wildlife specimen at the time of import nor had clearance been sought from USFWS for import of the defendant wildlife specimen into the United States.

16.     On or about May 14, 2015, WI Bell seized the defendant wildlife specimen at the FedEx International Hub in Memphis, TN, for violations of the ESA and its implementing

regulations. The seized defendant wildlife specimen was determined pursuant to 50 C.F.R. §12.12 to be of a value of $5,049.00. WI Bell was then contacted by claimant and advised him of the regulations affecting import of the crucifix and that the crucifix had been seized. WI Bell also offered claimant the option to abandon the crucifix and offered a deadline within which he should do so. WI Bell e-mailed claimant an abandonment form and letter of explanation.

17.     The day after the defendant wildlife specimen was seized, the broker submitted a Wildlife Declaration identifying the defendant wildlife specimen as African Elephant (*Loxodonta Africana)*, accompanied by various documents, including a commercial invoice which identified claimant as the importer and Eppli Auktionen as the exporter, described the contents as "Personal Use-Outstanding large ivory Christ corpus, probably 19th century, worked in the round. Very fine version with plastic wires and detail elaborate hair and deep eyes landscaped. Naturalistic shape with cut nipples and navel.  Mounted on a wooden cross," and identified the total value of the contents as $4,429.50 EUR.

18.     By May 20, 2015, the USFWS had received no further communication from claimant thus forfeiture proceedings were instituted against the defendant wildlife specimen. A Notice of Seizure and Proposed Forfeiture ("notice of seizure") dated June 30, 2015, was sent to both claimant and the exporter. In addition, the notice of seizure provided claimant and the exporter with personal letter notification, pursuant to 50 C.F.R. §12.23, of the proposed administrative forfeiture of the seized property. The notice of seizure was sent to achieve proper notice as soon as practicable and in no case more than 60 days after the date of the seizure, as required by CAFRA, 18 U.S.C. §983(a)(1)(A)(i). Additionally, the notice of seizure was published once a week for three (3) successive weeks in a newspaper of general circulation in the locality where the property was seized, in accordance with 50 C.F.R. §12.23(b)(1)(A).

19. On or about September 3, 2015, the Solicitor's Office received a letter entitled "Petition for Remission" from Stephanie Arends with Eppli Auktionen, which advised that the auction house shipped the items without any CITES permits based on incorrect information received from a local official. The letter further states that claimant requested that PayPal refund him his payment for the defendant wildlife specimen and therefore has forfeited his claim to the defendant wildlife specimen. Thus, the exporter chose to pursue the administrative option for contesting the proposed forfeiture and requested that the defendant wildlife specimen be released to the exporter, as it was cosigned to them by Ms. Cornelia Hellstern, Horb a. Neckar/Germany. USFWS referred the exporter's letter to the Atlanta Field Solicitor's Office on Spetember 3, 2015 for action.

20. Claimant subsequently submitted a seized asset claim form dated September 22, 2015, along with corresponding documentation, to the Atlanta Field Solicitor's Office of USFWS, which was received on October 5, 2015. Upon receiving the seized asset claim, the administrative proceedings regarding the exporter's petition for remission were terminated, as required by law.

### D.     Conclusion

21. For the foregoing reasons, I believe that the defendant property was imported in violation of the Endangered Species Act, and is therefore subject to forfeiture pursuant to 16 U.S.C. 1540(e).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  21st day of December, 2015.

/s Darwin Huggins
DARWIN HUGGINS
Assistant Special Agent in Charge
U.S. Fish and Wildlife Service

9